## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**RSN ASSOCIATES LLC**,

      Plaintiff,

v.                                   Case No. 8:25-cv-00047-WFJ-SPF

**SUREN AJJARAPU**,
**CHIRINJEEV KATHURIA**,
**ELIZABETH NG, OCEAN**
**BIOMEDICAL INC.**, **AESTHER**
**HEALTHCARE SPONSOR, LLC**, and
**OCEANTECH ACQUISITIONS**
**I SPONSORS LLC**,

      Defendants.

_____/

## ORDER

     Before the Court are Defendants Aesther Healthcare Sponsor, LLC ("Aesther") and Suren Ajjarapu's ("Ajjarapu") Motion to Dismiss, Dkt. 40, and Defendants Chirinjeev Kathuria ("Kathuria"), Elizabeth Ng ("Ng"), and Ocean Biomedical Inc.'s ("Ocean Biomedical") Motion to Dismiss, Dkt. 73, regarding the Amended Complaint filed by Plaintiff RSN Associates LLC ("RSN"), Dkt. 24, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has responded in opposition to each of the motions. Dkts. 48, 79. Defendants Aesther and Ajjarapu further replied to Plaintiff's response. Dkt. 55. The Court held a hearing on the

pending motion on August 21, 2024. Dkt. 82. After careful consideration, the Court grants Defendants' motions to dismiss.

## BACKGROUND

This case stems from investments made by Plaintiff in OceanTech Acquisitions I Sponsors LLC ("OceanTech") and Aesther, which are both special purpose acquisition companies ("SPACs" a/k/a "blank check companies"). Dkt. 24 ¶¶ 12–22; Dkts. 24-1, 24-2.

Defendant Kathuria is the Founder and Executive Chairman of the Board of Defendant Ocean Biomedical, Dkt. 24 ¶ 5, Defendant Ng is the Chief Executive Officer of Defendant Ocean Biomedical, *id.* ¶ 4, and Defendant Ajjarapu was the Managing Member of Aesther, *id.* ¶ 16; Dkt. 24-2 at 17. It is claimed that these three defendants were functionally in control of "OceanTech, Aesther, and Ocean Biomedical." Dkt. 24 ¶ 9.

OceanTech and Aesther, as SPACs, were formed to be sponsor entities for OceanTech Acquisitions I Corp. and Aesther Healthcare Acquisitions Corp., respectively. *Id.* ¶ 13, 17. Subscription Agreements between Plaintiff and both OceanTech and Aesther describe these SPACs as blank check companies that "will seek to raise money in an initial public offering . . . and then seek to consummate a merger, capital share exchange, asset acquisition, share purchase, reorganization or

other similar business combination with one or more businesses[.]" *Id.* ¶¶ 13, 17; Dkt. 24-1 at 1; Dkt. 24-2 at 1.

On April 29, 2021, Darshan Ram ("Ram"), as President of Plaintiff RSN, signed a Subscription Agreement with OceanTech ("OceanTech Agreement"). Dkt. 24 ¶¶ 12–15; Dkt. 24-1. "According to the OceanTech Agreement, Defendant OceanTech was to invest in OceanTech Acquisitions and receive shares of Class B common stock, referred to in the Agreement as Founders Shares, and Private Placement Warrants." Dkt. 24 ¶ 14; Dkt. 24-1 at 2. In exchange for Plaintiff's investment of $500,000, Plaintiff would "receive membership interest in Defendant OceanTech, which would represent an indirect interest in 100,000 Founder Shares and 500,000 Private Placement Warrants." Dkt. 24 ¶ 15; Dkt. 24-1 at 1–2, 15.

On July 4, 2021, Ram, as President of Plaintiff RSN, signed a Subscription Agreement with Aesther ("Aesther Agreement"). Dkt. 24 ¶¶ 16–22; Dkt. 24-2. "According to the Aesther Agreement, Aesther was to invest in Aesther Healthcare and receive shares of Class B common stock, referred to in the Agreement as Founders Shares, and Private Placement Warrants." Dkt. 24 ¶ 18; Dkt. 24-2 at 2. In exchange for Plaintiff's investment of $1,000,000, Plaintiff would "receive membership interest in Aesther, which would represent an indirect interest in 200,000 Founder Shares and 1,000,000 Private Placement Warrants." Dkt. 24 ¶ 19; Dkt. 24-2 at 1–2, 15. On September 17, 2021, "Aesther adopted an Operating

Agreement that was executed by Defendant Ajjarapu as Chief Executive Officer of Aesther and by RSN as the Nonvoting Member of Aesther, through Mr. Ram acting in his capacity as President of RSN." Dkt. 24 ¶ 20; Dkt. 24-3. It is claimed that Plaintiff "invested a total of $2,000,000.00 in Aesther and owned 400,000 non-voting shares equal to 15.24% membership in Aesther." Dkt. 24 ¶ 21. Plaintiff invested a total of $3,000,000 in Aesther. *Id.* ¶ 22.

Ocean Biomedical is alleged by Plaintiff to be "a sham that was publicly touted by the Defendants as a legitimate start-up company in scientific research and development." Dkt. 24 ¶ 28. The central claim is that Defendants deliberately established a fraudulent appearance of legitimacy for Ocean Biomedical in order to mislead investors and key personnel, and to personally profit from their investments. *Id.* ¶¶ 23–52. Specifically, Plaintiff claims that Defendants made various material misrepresentations and omissions to Plaintiff, as well as to other investors and key personnel. *Id.* ¶¶ 33–45. It is then claimed that Ocean Biomedical, through Defendants Kathuria, Ng, and Ajjarapu, prevented key personnel from communicating regarding the alleged material misrepresentations and omissions. *Id.* ¶¶ 46–49. Ultimately, Plaintiff alleges that Defendants Kathuria, Ng, and Ajjarapu "sought to misappropriate for themselves all investments made into Ocean Biomedical." *Id.* ¶¶ 51.

4

Regarding the involvement of OceanTech and Aesther in the alleged scheme, Plaintiff claims that these SPACs were each used by Defendants as "vehicles for a fraudulent scheme to funnel money into Ocean Biomedical for the personal gain of the individual Defendants." *Id.* ¶ 27.

Plaintiff asserts OceanTech never had a legitimate purpose and was created with the sole intention of being a front to fraudulently raise money for Ocean Biomedical, and thus Defendants Kathuria, Ng, and Ajjarapu. *Id.* ¶¶ 53, 58, 66. Plaintiff also claims that in addition to material misrepresentations and omissions, OceanTech sought to falsely create the appearance that it was attempting to facilitate legitimate business combinations. *Id.* ¶¶ 59, 61, 62. In January 2024, Nasdaq suspended OceanTech's securities from trade, and "OceanTech ceased all operations except those required for the windup of its business." *Id.* ¶¶ 63, 64. In September 2024, Nasdaq "delisted OceanTech's common stock, units, and warrants." *Id.* ¶ 65.

Plaintiff asserts that Aesther never had a legitimate purpose and was created with the sole intention of being a front to fraudulently raise money for Ocean Biomedical, and thus Defendants Kathuria, Ng, and Ajjarapu. *Id.* ¶¶ 68, 70. Allegedly, Aesther made various material misrepresentations and omissions. *Id.* ¶¶ 70–74. Aesther eventually completed a successful business combination with Ocean Biomedical, which resulted in Ocean Biomedical debuting as a publicly traded company on February 15, 2023. *Id.* ¶ 76.

5

Overall, Plaintiff claims to have invested $4,000,000—although, only a $500,000 investment in OceanTech and $3,000,000 of investments in Aesther are accounted for in the facts of the Amended Complaint. *Id.* ¶ 15, 22, 77. Plaintiff claims to have received Ocean Biomedical stock and allegedly attempted a stock transfer on March 25, 2024, to a brokerage account with the goal of selling the shares, but Defendant Ajjarapu blocked the stock transfer "in order to extend the life of the Ocean Biomedical fraud scheme and to hide Plaintiff's investment funds." *Id.* ¶¶ 81–86.

Plaintiff's Amended Complaint now brings the following eight counts against Defendants: Violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5(b)[1] ("Rule 10b-5(b)") (Count I); Violation of Rule 10b-5(a) (Count II); Violation of Rule 10b-5(c) (Count III); Violation of the Florida Securities and Investor Protection Act ("FSIPA"), Fla. Stat. §§ 517.301, 517.211 (Count IV); Civil Theft, Fla. Stat. §§ 812.014, 722.11 (Count V); Fraud in the Inducement (Count VI); Conversion (Count VII); Breach of Common Law Fiduciary Duty (Count VIII). Dkt. 24.

Defendants' motions seek dismissal of all claims, arguing that no claim meets the relevant pleading requirements of either Federal Rule of Civil Procedure 9(b)

---

[1] Securities Exchange Act of 1934, Pub. L. No. 73-291, § 10(b), 48 Stat. 891 (1934) (codified as amended at 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5).

("Rule 9(b)") or the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Dkts. 40, 73. Further, both motions seek dismissal of the Florida civil theft and conversion claims due to an alleged failure to state a claim for relief. *Id.* Defendants Aesther and Ajjarapu stress that the Subscription Agreements each contain non-reliance agreements, Clause Q, which should preclude the consideration of any statement by Defendants that Plaintiff may have relied upon outside the four corners of the Subscription Agreements. Dkt. 40 at 15–17.

## LEGAL STANDARD

"To survive a motion to dismiss, a claim brought under [Rule 10b-5(b)] must satisfy (1) the federal notice pleading requirements [of Federal Rule of Civil Procedure 8(a)(2)]; (2) the special fraud pleading requirements found in Federal Rule of Civil Procedure 9(b); and (3) the additional pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ('PSLRA')." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (citations omitted). A claim brought under Rule 10b-5(a) or (b) must also satisfy Rule 8(a)(2) and 9(b), but typically not the PSLRA. *Gnanaraj v. Lilium N.V.*, No. 23-CV-80232-RLR, 2024 WL 3916758, at *10 (S.D. Fla. Aug. 23, 2024).

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the plaintiff is entitled to relief to give the defendant fair notice of the claims and grounds. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (citation omitted). The plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). In considering a Rule 12(b)(6) motion to dismiss, the court must construe the facts in the light most favorable to the Plaintiff. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted).

Federal Rule of Civil Procedure 9(b) requires that, for claims alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Further heightened pleading requirements are imposed on certain claims under 17 C.F.R. 240.10b-5 via the PSLRA. These additional requirements include requiring a high degree of specificity in what is alleged, as well as alleging facts that create a strong inference of scienter. 15 U.S.C. § 78u-4(b)(1), (2). The court shall dismiss a claim if these PSLRA requirements are not met. 15 U.S.C. § 78u-4(b)(3)(A).

## DISCUSSION

Based on a careful review of the pleadings, the Court grants Defendants' motions to dismiss the Complaint without prejudice. As discussed below, the Complaint fails to adequately plead all counts, which include the Rule 9(b) and PSLRA's heightened pleading requirements.

### I.    Non-Reliance Clause

Because all claims made by Plaintiff sound in fraud as currently pled, including references to alleged misrepresentations and omissions by Defendants, it must first be established whether the Court may consider such misrepresentations and omissions. This will then color all claims going forward.

On April 29, 2021, and July 4, 2021, Darshan Ram signed subscription agreements as president of RSN with OceanTech and Aesther, respectively. Dkts. 24-1, 24-2. Both agreements contain an identical provision, Clause Q, which reads as follows:

> No representations or warranties have been made to the Subscriber by the Company, or any officer, employee, agent, affiliate or subsidiary of the Company, other than the representations and warranties of the Company contained herein, and in subscribing for the Membership Interest Subscriber is not relying upon any representations other than those contained in this Agreement. The Subscriber has not been furnished with any oral representation or oral information in connection with or in any way relating to the transactions set forth herein or the proposed business or prospects of the Company or the SPAC.

Dkts. 24-1 at 7, 24-2 at 7.

On its face, Clause Q would seem to bar Plaintiff from alleging fraudulent misrepresentations and omissions outside the four corners of the agreements. Plaintiff cites 15 U.S.C. § 78cc in an effort to show that such non-reliance clauses cannot be taken as conclusory in cases of securities fraud. 15 U.S.C. § 78cc(a) ("Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of a self-regulatory organization, shall be void."). Case law appears to be split on this issue, with some circuits holding that non-reliance clauses are not conclusory in cases of fraud, *AES Corp. v. Dow Chem. Co.*, 325 F.3d 174, 180 (3d Cir. 2003) (finding that enforcement of a non-reliance clause to bar a Rule 10b-5 fraud claim as a matter of law would be inconsistent with 15 U.S.C. § 78cc(a)), and other circuits appearing to more strictly hold plaintiffs to what they signed, *One-O-One Enters., Inc. v. Caruso*, 848 F.2d 1283, 1287 (D.C. Cir. 1988) ("Were we to permit plaintiffs' use of the defendants' prior representations (and defendants' nondisclosure of negotiations inconsistent with those representations) to defeat the clear words and purpose of the Final Agreement's integration clause, 'contracts would not be worth the paper on which they are written.'").

Although, the Sixth Circuit has worked to square this apparent contradiction between the non-conclusory and strict approaches. In *Brown v. Earthboard Sports USA, Inc.*, the court stated that "far from erecting a *per se* rule foreclosing the

possibility of recovery for deceit in all situations where an allegedly injured party has signed a non-reliance clause," the courts that take the strict approach "simply accord an appropriate weight to evidence of the signing of such a clause in the entire context of the alleged fraud." 481 F.3d 901, 921 (6th Cir. 2007). Therefore, without direct precedent from the Eleventh Circuit,[2] the Court adopts an approach analogous to that of the Sixth Circuit.

The Court finds that Clause Q, the non-reliance clause contained in both subscription agreements, Dkts. 24-1 at 7, 24-2 at 7, does not *per se* bar Plaintiff from alleging fraudulent misrepresentations and omissions outside the four corners of the agreements. Instead of outright barring the allegations from being made, once the claims are adequately pled, the non-reliance clauses will be given their due weight in the eventual consideration of reliance, as required by § 10(b) of the Exchange Act and Rule 10b-5.

## II.    Counts I, II, and III

Counts I, II, and III allege violations of Rule 10b-5(b), (a), and (c), respectively. Dkt. 24 at 20–31. Plaintiff's Complaint is currently deficient as to each count because the allegations made lack the requisite specificity or particularity. The Amended Complaint is devoid of the full "who, what, when, where, and how: the

---

[2] Plaintiff cites to *Bruschi v. Brown*, 876 F.2d 1526 (11th Cir. 1989) in their supplemental briefing. Dkt. 83 at 2. Although this case does discuss the reliance factor reliance required by § 10(b) of the Exchange Act and Rule 10b-5, it is in the context of contradictory oral and written representations—this case does not discuss non-reliance clauses (a/k/a merger or integration clauses).

first paragraph of any newspaper story." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

Each of these claims alleges fraud or mistake and is thus subject to Rule 9(b), requiring such claims to be pled "with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Plaintiff assents that Count I, alleging a violation of Rule 10b-5(b), is subject to the higher pleading standard of the PSLRA. Dkt. 48 at 5. Regarding Counts II and III, typically a plaintiff alleging violations of Rule 10b-5(a) and (c) is not subject to the PSLRA's heightened pleading standard for alleged misrepresentations. *Gnanaraj*, 2024 WL 3916758, at *10. "However, a plaintiff cannot evade the PSLRA's pleading standard by repackaging its misrepresentations claim as a 'scheme.'" *Id.* Although the Court finds Counts II and III to be repackaged misrepresentation claims as they are currently pled, a PSLRA analysis is unnecessary, as the claims fail the lower pleading standard of Rule 9(b).

### a. Count I - Failure to state a claim for Rule 10b-5(b) violation

Under Rule 10b-5(b), it is "unlawful for any person . . . to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security."

17 C.F.R. § 240.10b-5(b). To properly state a claim of securities fraud under Rule 10b-5(b), a plaintiff must adequately allege: "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss [i.e., damages]; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called 'loss causation.'" *FindWhat Inv. Grp.*, 658 F.3d at 1295 (citations omitted). The Court will focus specifically on the requirements to allege specific (1) material misrepresentations or omissions and (2) scienter.

The PSLRA provides that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Plainly stated, Plaintiff has failed to specify any one specific statement that is alleged to have been misleading, and even less so the reasons why such a statement was misleading. Plaintiff includes various general allegations of misleading statements and omissions, but does not provide any quotations or direct references to exactly what statements were made or exactly where information was omitted—only providing the subject matter of such misrepresentations or omissions. *See, e.g.*, Dkt. 24 ¶ 91 ("Defendants . . . made false

representations and omissions of material facts to Plaintiff, including regarding the legitimacy of the investments and intentions to facilitate legitimate business combinations"). Even viewing such allegations in the light most favorable to Plaintiff, there is a failure to allege the requisite specificity regarding alleged misrepresentations or omissions, as required by the PSLRA.

The PSLRA also necessitates proof of scienter, requiring that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind [i.e., scienter]." 15 U.S.C. § 78u-4(b)(2) (emphasis added). "Although factual allegations may be aggregated to infer scienter, scienter must be alleged with respect to each defendant and with respect to each alleged violation of the statute." *FindWhat Inv. Grp.*, 658 F.3d at 1296 (citation omitted). Plaintiff has further failed to provide any specific fact that would give rise to a "strong inference" that any of the Defendants acted with scienter. Even if the alleged misrepresentations and omissions are presumed to have occurred, the Amended Complaint is devoid of facts that particularly allege Defendants' supposed scienter—only providing vague allegations of knowledge or recklessness. *See, e.g.*, Dkt. 24 ¶¶ 41, 85, 88, 91, 92, 93. Even viewing such allegations in the light most favorable to Plaintiff, there is a failure to allege the requisite specificity regarding scienter, as required by the PSLRA.

14

Therefore, Plaintiff must plead the claim alleged in Count I with greater specificity. The Court dismisses Count I without prejudice.

> b. *Counts II and III - Failure to state a claim for Rule 10b-5(a) and (c) violations ("Scheme Liability")*

Under Rule 10b-5(a), it is "unlawful for any person . . . to employ any device, scheme, or artifice to defraud . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(a). Additionally, under Rule 10b-5(c), it is "unlawful for any person . . . to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(c). Jointly, these rules describe what is considered "scheme liability." *IBEW Loc. 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 Fed. App'x 850, 858 (11th Cir. 2016).

"Whereas subsection (b) of Rule 10b-5 prohibits the making of untrue statements or omissions, subsections (a) and (c) prohibit *deceptive conduct*." *Tupperware Brands Corp. Sec. Litig. v. Tupperware Brands Corp.*, No. 22-10658, 2023 WL 5091802, at *8 (11th Cir. Aug. 8, 2023) (emphasis added); *see IBEW Loc. 595 Pension & Money Purchase Pension Plans*, 660 F. App'x at 856 (quoting *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 643 n. 29 (3d Cir. 2011)) ("We refer to claims under Rule 10b-5(a) and (c) as 'scheme liability claims' because they make

deceptive conduct actionable, as opposed to Rule 10b-5(b), which relates to deceptive statements."). To properly state a scheme liability claim, a plaintiff must allege the deceptive conduct with sufficient particularity to satisfy Rule 9(b). *See Plumber & Steamfitters Loc. 773 Pension Fund, Bos. Ret. Sys. v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021) (citations omitted) ("To maintain a 10b-5(a) or (c) claim, a plaintiff must specify 'what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue.'").

The scheme, as alleged by Plaintiff, is described in Paragraph 27 of the Amended Complaint as OceanTech and Aesther being used as vehicles "to funnel money into Ocean Biomedical for the personal gain of the individual Defendants." Dkt. 24 ¶ 27. Here, the Court finds that Plaintiff failed to sufficiently allege that Defendants committed deceptive conduct in furtherance of the aforementioned scheme. When describing Defendants' involvement in "devices, schemes, and artifices," the same set of facts is utilized for both Counts II and III. Dkt. 24 ¶¶ 106, 113. Omitting generic, unspecified allegations of mere misrepresentations or omissions, what remains related to conduct is as follows: using OceanTech and Aesther as vehicles for fraud to solicit investments, *id.* 24 ¶¶ 106(a), 113(a); using OceanTech as a front for lending legitimacy by fraudulently pretending to facilitate a business combination, *id.* ¶¶ 106(b), 113(b); using Aesther to facilitate a business

16

combination for the purpose of misappropriating solicited investments, *id.* ¶¶ 106(c), 113(c); and using the shared control between the companies to further the fraudulent scheme, *id.* ¶¶ 106(m), 113(m). After additionally considering the prior incorporated allegations of Paragraphs 1-86 of the Amended Complaint, the Court finds that the "who, what, when, where, and how" were not adequately alleged to establish particular deceptive conduct. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008); *see IBEW Loc. 595 Pension & Money Purchase Pension Plans*, 660 F. App'x at 858 (citation omitted).

Even viewing the allegations of Counts II and III in the light most favorable to Plaintiff, the claims are not pled with the requisite particularity, as required by Rule 9(b). This is not a close call. Therefore, the Court dismisses Counts II and III without prejudice.

### III.    Counts IV, V, VI, VII, and VIII

With the first three counts dismissed, only state law statutory and common law claims remain. Dkt. 24 31–52. Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court has "dismissed all claims over which it has original jurisdiction." *See Silas v. Sheriff of Broward Cnty., Fla.*, 55 F.4th 863, 866 (11th Cir. 2022) ("Although the district court has discretion, concerns of federalism—namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state-law

claims after the federal claims are dismissed."); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."). Such is the case here, as only non-diverse state-law claims remain. At this point, the Court declines to exercise its supplemental jurisdiction over Counts IV, V, VI, VII, and VIII, and dismisses these remaining counts without prejudice.

**CONCLUSION**

Plaintiffs have not adequately pled their case. Notwithstanding, because the Complaint is the first operative complaint dismissed by the Court, Plaintiff will have another opportunity to do so. Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendants' Motions to Dismiss, Dkts. 40, 73, are **GRANTED.** Plaintiff's Amended Complaint, Dkt. 24, is **DISMISSED** without prejudice.

2. If Plaintiffs choose to file an Amended Complaint, they shall do so within **fourteen (14) days** of this Order.

3. Plaintiffs are specifically ordered not to abjure or elide the contract documents between the parties that appear to be highly relevant to the matter before the Court—specifically the non-reliance clauses. Dkts. 24-1 at 7, 24-2 at 7. These need to be squarely and fully addressed in any second amended complaint.

**DONE AND ORDERED** in Tampa, Florida, on September 16, 2025.

*/s/ William F. Jung*

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**